THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
CHRISTINE M. ADAMS
California Bar Number 172876
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-8692
Facsimile: (213) 894-6269
E-mail: christine.adams@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LORENZO ESPINOZA,<br><br>Defendant. | No. CR 04-263-SVW<br><br>**GOVERNMENT'S SENTENCING POSITION; EXHIBIT**<br><br>Sentencing Date: 08/31/09 at 11:00 a.m. |

Plaintiff United States of America, by and through its attorney of record, the United States Attorney for the Central District of California, hereby files its Sentencing Position Regarding Defendant Lorenzo Espinoza.

The government's position is based upon the attached memorandum, the files and records of this case, and such additional evidence and argument as may be received at the sentencing hearing.

DATE: August 25, 2009

Respectfully submitted,

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

/s/
CHRISTINE M. ADAMS
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . i

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Offense Conduct . . . . . . . . . . . . . . . . . . . . . . . 2

III. The Government's Analysis of the Relevant Sentencing Factors Listed in 18 U.S.C. § 3553(a) . . . . . . . . . . . 6

IV. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

**FEDERAL CASES:** **PAGE(S)**

United States v. Booker, 543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . 10

United States v. Enriquez-Munoz, 906 F.2d 1356 (9th Cir. 1990) . . . . . . . . . . . . 9, 10

United States v. Orlando, 553 F.3d 1235 (9th Cir. 2008) . . . . . . . . . . . . . . 6

**FEDERAL STATUTES:**

18 U.S.C. § 371 . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . 2, 6

26 U.S.C. § 7203 . . . . . . . . . . . . . . . . . . . . . . 1

**SENTENCING GUIDELINES:**

U.S.S.G. § 2F1.1(a) . . . . . . . . . . . . . . . . . . . . . 1

U.S.S.G. § 2F1.1(b)(1)(M) . . . . . . . . . . . . . . . . . . 1

U.S.S.G. § 3B1.1(a) . . . . . . . . . . . . . . . . . . . . . 1

U.S.S.G. § 3E1.1(b) . . . . . . . . . . . . . . . . . . . . . 1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. Introduction

On December 4, 2006, defendant Lorenzo Espinoza ("defendant") pled guilty pursuant to a plea agreement to counts one through five of the first superseding information (FSI) in this case, which charge violations of 18 U.S.C. §§ 371 (conspiracy), 152(1) (concealing assets in a bankruptcy proceeding), 152(2) (false oaths and claims in a bankruptcy proceeding), and 1957 (money laundering), and 26 U.S.C. § 7203 (willful failure to pay tax). Sentencing has been pending for over two and a half years in order to allow defendant time to comply with a condition of his plea agreement that requires him to file his tax returns for tax years 1997-2005 before the time of sentencing. As of the date of this filing, defendant still has not filed his tax returns or otherwise reached a settlement with the IRS. In fact, defendant has not filed a personal income tax return since calendar year 1997.

The government concurs with the presentence report (PSR) and the addendum to the PSR, which together recommend a sentence as follows:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2F1.1(a) |
| Specific Offense Characteristics (More than $1.5 million) : | 12 | U.S.S.G. § 2F1.1(b)(1)(M) |
| Role : | 4 | U.S.S.G. § 3B1.1(a) |
| Acceptance of Responsibility : | -3 | U.S.S.G. § 3E1.1 (b) |

| | | |
|---|---|---|
| Guideline Total Offense Level | : | 19 (30-37 months) |
| Upward Variance | : | 12 months (for a total sentence of 49 months) 18 U.S.C. § 3553(a) |
| Total Recommended Sentence: | | 49 months; 3 years supervised release; a fine is waived (in light of restitution liability) |

The government also recommends that defendant be sentenced to restitution in the amount of $2,383,695.

## II. **Offense Conduct**

Defendant owned and/or controlled numerous business entities, including: American SA, Inc.; Campanile Holdings, Inc., Cleveland Equity Partners, Inc.; Convention of USA, Inc.; Energy Platinum Real Estate Corporation; Equity Capital Associates, Inc.; Juan M. Garcia, Inc. (formerly incorporated as Peachtree Properties, Inc. on or about November 12, 1997); Silverado Holdings, Inc.; and Stone Sam, Inc. (PSR ¶¶ 17(a)-(i)). As set forth below, defendant used these entities to purchase and sell properties as part of a scheme to defraud the Department of Housing and Urban Development (HUD).

Count One (Conspiracy to Defraud HUD)

Beginning in approximately April 1995 and continuing until approximately May 2001, defendant Lorenzo Espinoza ("defendant") engaged in a fraudulent scheme with coconspirators to obtain money from HUD and various commercial lenders. (PSR ¶ 25).

The scheme essentially operated as follows. Defendant and

coconspirators located and purchased residential properties that were on the market for sale. (PSR ¶ 26). Defendant and coconspirators specifically targeted properties that qualified for resale using home mortgage loans insured by the Federal Housing Administration (the "FHA"). (PSR ¶ 27). Defendant purchased and sold the properties through the business entities that he owned and/or controlled. (PSR ¶ 28). Defendant and coconspirators then found individuals to sign the loan documents necessary to complete the resale of the properties. (PSR ¶¶ 29-30). These individuals were "straw buyers" in that, even though they signed the documents and appeared to be bona fide purchasers of the properties, they actually did not provide the down payments for the property purchases and held only nominal title to the properties. (PSR ¶¶ 31-35).

Defendant and coconspirators supplied the down payments for the straw buyers and obtained fraudulent forms W-2 and paycheck stubs to submit as part of the loan applications. (PSR ¶¶ 31, 35).

For example, in or about January 1998, defendant sold a property located at 4000 Trinity Street, Los Angeles, that he knew would qualify for resale using an FHA-insured loan. (PSR ¶ 42). Defendant's coconspirators prepared a loan application for the purchase of the Trinity Street property using false employment and other documents. (PSR ¶ 43). A lender approved the false loan application and the FHA agreed to insure the loan. (PSR ¶ 44). As a result, in or about March 1998, the lender

wired the FHA insurance premium to HUD's account in Pennsylvania. (Id.).

Count Two (Willful Failure to Pay Tax)

In calendar year 1996, defendant owed approximately $199,053 in federal income tax. (PSR ¶ 55). Defendant purposely failed to pay this amount by April 15, 1997, with the intent to evade his duty under the tax laws. (Id.).

Counts Three (Concealing Assets in Bankruptcy Proceeding) and Four (False Oaths and Claims in Bankruptcy Proceeding)

On February 9, 1999, defendant initiated a bankruptcy proceeding by causing to be filed a Voluntary Petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, in a matter entitled In re: Lorenzo Espinoza, case number LA99-14966-EC (the "bankruptcy case"). (PSR ¶ 56). Defendant also caused schedules of his assets and liabilities and a statement of his financial affairs to be filed in his bankruptcy case. On that same day, a bankruptcy trustee was appointed to administer defendant's bankruptcy estate. (Id.).

The day before, on February 8, 1999, in connection with his bankruptcy case, defendant signed documents declaring under penalty of perjury that he had read the schedules of his assets and liabilities and the statement of his financial affairs and that they were correct to the best of his knowledge, information, and belief. (PSR ¶ 57).

At the time that defendant initiated his bankruptcy case and while it was pending, defendant owned a Rolex Daytona watch,

serial number W802102; a 1990 Ferrari, vehicle identification number ZFFSG17A0L0086053; a 1995 Ferrari, vehicle identification number ZFFRG43A6S0099278; and a 1989 Lamborghini, vehicle identification number ZA9CA05AXKLA12579. (PSR ¶ 58). For the entire time that defendant's bankruptcy case was pending, defendant concealed these assets from creditors, the United States Trustee, and the trustee appointed to administer the bankruptcy estate. (Factual Basis, Defendant's Plea Agreement).

On March 17, 1999, defendant knowingly and willfully made a false and fraudulent material statement under oath in and in relation to defendant's bankruptcy case by falsely testifying under oath in a proceeding before the trustee appointed to administer the bankruptcy estate that defendant had listed all of his assets in his bankruptcy petition when in fact, as defendant then well knew, he had not listed all of his assets. (PSR ¶ 59). Specifically, defendant knew that he had not listed a Rolex Daytona watch, serial number W802102; a 1990 Ferrari, vehicle identification number ZFFSG17A0L0086053; a 1995 Ferrari, vehicle identification number ZFFRG43A6S0099278; and a 1989 Lamborghini, vehicle identification number ZA9CA05AXKLA12579. (Id.).

On June 23, 1999, the United States Bankruptcy Court for the Central District of California issued an order dismissing defendant's bankruptcy case. (PSR ¶ 60).

Count Five (Money Laundering)

On December 10, 2002, defendant knowingly engaged in and caused others to engage in a monetary transaction affecting

interstate and foreign commerce in criminally-derived property of a value greater than $10,000 and which was derived from a specified unlawful activity, namely, concealment of assets in a bankruptcy proceeding, in violation of Title 18, United States Code, Section 152(1). (PSR ¶ 61). Specifically, defendant sold a 1990 Ferrari, vehicle identification number ZFFSG17A0L0086053, and a 1995 Ferrari, vehicle identification number ZFFRG43A6S0099278, which were both assets that defendant had concealed in a bankruptcy proceeding, to Sunset European Motorcars, a business engaged in vehicle sales in Los Angeles County, for $127,500, paid by check number 0081402254. (Id.).

**III. The Government's Analysis of the Relevant Sentencing Factors Listed in 18 U.S.C. § 3553(a)**

Section 3553(a) lists the seven factors that a court must consider in imposing a sentence. These factors include (1) the general nature and circumstances of the crime and the history and characteristics of defendant; (2) the usefulness of the sentence (A) to promote respect for the law, (B) to deter, (C) to protect the public from defendant's further crimes, or (D) to rehabilitate the defendant; (3) the kinds of sentences available; (4) the Sentencing Guidelines range; (5) pertinent policy statements; (6) the need to avoid sentence disparities between similarly situated defendants; and (7) any need for restitution. 18 U.S.C. § 3553(a); United States v. Orlando, 553 F.3d 1235, 1239 n.1 (9th Cir. 2008).

Most of the disputed issues in this case bear upon § 3553(a)(1) (the general nature and circumstances of the crime

and the history and characteristics of defendant). With regard to the general nature and circumstances of the crime, the government concurs with the USPO's recommendation that an upward variance is appropriate to take into account various unique factors in this case. See Revised Letter to Court from USPO, dated May 29, 2007. As the USPO makes clear, the fact that defendant engaged in three distinct crimes, including a scheme to defraud HUD that lasted more than six years and that involved the recruitment of numerous straw buyers, and the fact that defendant engaged in these crimes for the sole purpose of maintaining an exorbitant lifestyle are significantly egregious aspects of the harmfulness of defendant's conduct that are not contemplated under the Guidelines. Additionally, even though defendant agreed as part of his plea agreement that he would file, prior to the time of sentencing, individual income tax returns for calendar years 1997-2005 that correctly reported all income, and even though his sentencing has been pending for more than two and a half years to allow defendant to satisfy this condition, defendant has failed to file any such returns in the time permitted. Defendant's failures to comply with his plea agreement and to provide a true accounting of his income from 1997 through 2005 (or from 2006-2008, for that matter) demonstrate a failure to accept responsibility for his actions and provide another appropriate basis for the upward variance that the USPO seeks. Such an upward variance would also serve society's interest in promoting respect for the law and affording

adequate deterrence to this type of criminal conduct.

Defendant claims that he engaged in a conspiracy to defraud HUD solely because he had "cash flow problems" as a result of the time and cost in rehabilitating the properties that he sold. (Defendant's Position Re: Sentencing Factors ("Def. Pos."), at 2). Defendant further claims that he "was not in the business of acquiring distressed properties and merely flipping them to make a profit," but rather, "he was doing good for his community in helping people acquire affordable housing." (Def. Pos., at 2). Such claims contradict the evidence in this case. Defendant's motives were not charitable, as he now asserts. Defendant engaged in a conspiracy to defraud HUD because it was a lucrative scheme and allowed him to live an exorbitant lifestyle. The manner in which the scheme was carried out demonstrates the greed involved. Defendant and his co-conspirators recruited straw buyers to nominally purchase properties, supplied false documents to enable the straw buyers to qualify for the FHA-insured loan, as well as the down payment for the purchase of the property, and then walked away with the loan proceeds, while allowing the loan payments to go into default. (PSR ¶¶ 26-41, 46-53).

The manner in which defendant spent the scheme proceeds also demonstrates that he was motivated by greed and not by charity. Defendant either reinvested the proceeds in the scheme by secretly funding down payments for straw buyers to purchase additional properties, or he used the proceeds to purchase expensive assets or to gamble. Moreover, defendant also

conspired to defraud HUD at the same time that he attempted to evade his creditors by filing a fraudulent bankruptcy petition, and at the same time that he failed to file personal income tax returns or pay any personal income taxes.[1] For example, between February 15, 1999 (which was just after defendant filed the fraudulent bankruptcy petition on February 9, 1999), and March 14, 1999, various casinos filed at least twelve currency transaction reports showing that defendant, using his California driver's license as identification, redeemed over $560,000 in chips for currency, paid over $190,000 in currency for bets lost, and purchased over $11,000 in chips with currency. (Affidavit, at USPO 36). During the same period, defendant also owned two Ferraris, a Lamborghini, and a Rolex watch. (PSR ¶ 58).

In 2001, defendant used the proceeds from the sale of a property in the amount of $290,000 to purchase a 2001 Mercedes Benz S500V. (Affidavit, at USPO 32). In addition, at the time the PSR was prepared, defendant owned a 2005 H2 Hummer, a 2005 500SL Mercedes, and over $3 million in properties. (PSR ¶¶ 11-14). At that same time, defendant owed over $100,000 in unpaid property taxes and $195,000 in unpaid judgments. (PSR ¶ 116).

Defendant argues that United States v. Enriquez-Munoz, 906 F.2d 1356 (9th Cir. 1990) forbids the Court from taking into

[1] In 1999, defendant used proceeds from the sale of a property to pay a 1996 tax liability in the amount of $145,378.38. (Affidavit of Special Agent Vilma S. Sujodolsky in support of Search Warrant ("Affidavit"), at USPO 30-31) (attached hereto as Exhibit). Defendant has not filed a personal income tax return since calendar year 1997. (Affidavit, at USPO 37).

account defendant's motive in engaging in these crimes. Enriquez-Munoz stands for the proposition that, because a desire for profit is a motive in many crimes, it does not constitute an unusual or extraordinary circumstance with respect to the Guidelines. 906 F.2d at 1361-62. Enriquez-Munoz was decided, however, before United States v. Booker, 543 U.S. 220 (2005), rendered the Guidelines advisory only. Defendant's motive is especially relevant in analyzing the 3553(a) factors, which the Court is required to consider.

Defendant also asks the Court to take into account certain purported good deeds. He seeks credit for helping numerous people obtain affordable housing, for devoting time to his children, and for contributing over $150,000 to a church. (Def. Pos., at 6). First, the record establishes that defendant's motive in buying and selling properties was not to do good deeds but to earn a profit, even if earning a profit meant perpetrating a fraud. Second, fulfilling one's role as a father should not be considered a good deed, but a responsibility. Finally, defendant's charitable contributions should be considered in light of the fact that defendant has paid no income taxes during that same period and that he presently has no intentions of making any payments toward any tax or restitution liabilities. (Def. Pos., at 6).

Defendant takes issue with a four-level role enhancement applied to his sentence based on two claims. First, defendant

claims that the statements of one of defendant's employees and co-conspirators is "confusing in that she was involved in and admitted illegal activity unconnected to" defendant. (Def. Pos., at 5). Second, defendant claims that "it was not [defendant] alone that caused others to be implicated in the scheme" in that defendant "availed himself of others whom he did not control who provided false documentation for their own benefit." (Def. Pos., at 5). The basis for the first claim is unclear, but in any event, both claims are irrelevant. Whether defendant's co-conspirators also committed other crimes not connected to defendant or whether they participated in the conspiracy for their own benefit is not relevant to the issue of defendant's role. Sentencing Guideline 3B1.1 recommends a four-level upward adjustment if "defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1(a), comment. (n.1). In assessing whether an organization is "otherwise extensive,"

> all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.

U.S.S.G. § 3B1.1(a), comment. (n.2). In assessing whether a

defendant is an organizer or leader, the court should consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1(a), comment. (n.4). In this case, there is no dispute that defendant was a real estate developer who employed or otherwise utilized numerous other individuals to carry out a scheme that garnered him millions of dollars in proceeds. For example, in addition to his employee Esperanza Espinoza,[2] defendant utilized loan officers, such as Dolores Validivia,[3] suppliers of false documents, such as Julio Baez,[4] notaries, such as John Campos,[5] and recruiters of straw buyers, such as Pedro Rodriguez.[6] With regard to the other factors, there is also no dispute that, as the investor, defendant exercised most of the

---

[2]Esperanza Espinoza pled guilty in United States v. Espinoza, CR 06-261-SVW.

[3]Dolores Valdivia pled guilty in United States v. Valdivia, CR 04-1693.

[4]Julio Baez pled guilty in United States v. Baez, CR 04-388-GHK.

[5]John Campos pled guilty in United States v. Campos, CR 02-1064-JFW.

[6]Pedro Rodriguez pled guilty in United States v. Rodriguez, CR 04-1071-RSWL.

authority in deciding which properties to purchase and claimed a right to a larger share of the fraudulent proceeds. Accordingly, applying a four-level role enhancement in this case is appropriate.

**IV. Conclusion**

Based on the foregoing, the government recommends that defendant receive a sentence of 49 months; three years supervised release; and restitution in the amount of $2,383,695.